# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ERIC L. TOLONEN,

                Petitioner,

    v.                                         Case No. 09-CV-498

RANDY HEPP,

                Respondent.

_____

## ORDER

On May 18, 2009, Eric L. Tolonen ("Tolonen") submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2003 conviction in Washington County Circuit Court for one count of first-degree reckless homicide as party to that crime. (Docket #1). Mr. Tolonen's petition articulates four grounds for relief: one due process claim related to the state court's refusal to sever the petitioner's trial from that of his co-defendant; and three ineffective assistance of counsel claims related to his trial counsel and appellate counsel's performance and the state court's evaluation of those claims.[1] With benefit of the parties' briefs, the court proceeds to review the facts and procedural history animating Mr. Tolonen's petition.

---

[1] The court notes that in its July 14, 2009 screening order (Docket #7), the court construed Mr. Tolonen's petition as only stating three claims for relief. The court did that in the context of a preliminary review done pursuant to Rule 4 of the Rules Governing Section 2254 Cases to ensure that the petition did not "plainly appear" to warrant dismissal. The court does not bind itself by its initial review of the petition and liberally construes the claims in the habeas petition.

## BACKGROUND

In the early morning of November 16, 2002, an altercation between Amanda Sprang ("Sprang") and Joshua Dambruch ("Dambruch") occurred outside an apartment building in Allenton, Wisconsin, a small unincorporated community between the cities of Beaver Dam and West Bend. After Dambruch physically struck Sprang, the fight quickly escalated. Sprang's boyfriend came to her defense and Dambruch's friend, Jose Guerrero ("Guerrero") of Beaver Dam, joined in the melee, aiding Dambruch. Soon after, Jay Weiss ("Weiss") and the petitioner, Tolonen, ran from a nearby apartment and opted to join the ruckus on the side of Sprang. During the ensuring scuffle, Tolonen hit Guerrero repeatedly with a broomstick. As Guerrero was on the ground, Tolonen and Weiss began to kick and stomp on Guerrero. Ultimately, the Beaver Dam man died as result of blunt force trauma that was inflicted on his head during the fight.

Tolonen and Weiss were tried together in Washington County Circuit Court. Both defendants contended that they were acting in defense of others. Moreover, Weiss argued that Tolonen was primarily responsible for the injuries that killed Guerrero. Tolonen argued, on the other hand, that he did not deliver the lethal blow. Tolonen had asked that the court sever the trial, such that the petitioner and Weiss were tried separately, contending that the defendants' defenses were antagonistic to each other. The trial court denied this request. The jury ultimately found Mr. Tolonen guilty of first-degree reckless homicide as a party to the crime, and the

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 2 of 25   Document 37

circuit court sentenced him to twenty years of initial confinement and thirty years of extended supervision in December of 2003.

After his sentencing, Mr. Tolonen began several attacks on his conviction. First, the petitioner made a direct attack beginning in February of 2004, appealing his case to the Wisconsin Court of Appeals and the Wisconsin Supreme Court. During his direct appeal, Mr. Tolonen, represented by a court-appointed attorney, argued that his conviction should be reversed because the trial court erred in not severing his trial from that of his co-defendant. The Wisconsin appellate court affirmed the circuit court's decision on February 9, 2005. Mr. Tolonen, with the help of appellate counsel, appealed the decision of the Wisconsin Court of Appeals to the Wisconsin Supreme Court, raising the same issue about the need for the co-defendants' trial to be severed. However, the Wisconsin Supreme Court denied Mr. Tolonen's petition for review on June 1, 2005.

Mr. Tolonen then commenced a series of collateral attacks on his conviction, arguing, in sum, that both his trial and appellate counsels were ineffective in their representation. On April 27, 2006, the petitioner filed a motion for post-conviction relief, pursuant to Wis. Stat. § 974.06, raising a plethora of claims including, in relevant part, six different reasons for why the petitioner's trial counsel was ineffective. Specifically, in the circuit court, Tolonen argued that his trial counsel's performance was deficient for: (1) failing to call an expert that would testify that an injury to the victim's head had the impression of a pattern that matched the bottom

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 3 of 25   Document 37

of his co-defendant's shoe; (2) failing to call the petitioner as a witness; (3) failing to call as a witness a person who said that he did not see Tolonen kick or stomp the witness; (4) failing to request a jury instruction on voluntary intoxication to negate an element of the underlying charge; (5) failing to present evidence of the victim's criminal record at sentencing; and (6) failing to develop a theory of the defense. Moreover, because the issues were not raised in his previous appeal, Tolonen argued that his postconviction counsel who handled his direct appeal was ineffective for not challenging his trial counsel's effectiveness. The circuit court rejected the petitioner's claims, and Mr. Tolonen appealed to the Wisconsin Court of Appeals, raising the same issues he argued before the circuit court on his ineffective assistance of counsel claims. On August 13, 2008, the appellate court affirmed the circuit court's ruling.

The petitioner then decided to appeal the Wisconsin Court of Appeals' ruling to the Wisconsin Supreme Court. Tolonen's August 21, 2008 petition for review to the Wisconsin Supreme Court focused on two legal issues: (1) under Wisconsin law, what constitutes a "sufficient reason" for a defendant's failure to previously raise a claim in an earlier post-conviction motion;[2] and (2) whether the Court of Appeals decision was in error by failing to address the petitioner's argument that the cumulative effect of all of the errors by his counsels violated his Sixth Amendment

---

[2] The court is at a loss as to why Mr. Tolonen wanted this issue decided by the Wisconsin Supreme Court, as he had prevailed on the issue before the Wisconsin Court of Appeals, who ruled on the merits of the petitioner's collateral attack, as opposed to finding procedural default.

-4-

right to counsel. Mr. Tolonen's brief to the Wisconsin Supreme Court focused almost entirely on his first argument. When the petitioner did discuss the Sixth Amendment question, he never discussed any of the alleged infirmities of his trial or appellate counsel's actions, instead opting to opine for two and a half pages regarding the efficacy of the contention that mistakes by an attorney can accumulate to deprive a criminal defendant of his or her right to counsel.[3] The petitioner did attach to his petition to the Wisconsin Supreme Court the judgment of conviction, the trial court's order, portions of the briefs by each side, and the Court of Appeals' decision. The Wisconsin Supreme Court denied Tolonen's petition on October 15, 2008.

Twelve days later, the petitioner attempted another collateral attack on his conviction, filing a state petition for a writ of habeas corpus in the Wisconsin Court of Appeals. In his latest collateral attack, Tolonen argued that his appellate counsel during his first appeal was ineffective for not raising three issues on direct appeal: (1) that the trial court erred in denying Tolonen's motion to suppress statements he made to investigating officers; (2) the trial court erred in denying Tolonen's motion

_____

[3] The closest Mr. Tolonen's brief comes to describing the facts that support his ineffective assistance of counsel claim occur at pages 13 and 14 of the brief:

In the case at bar, there is a significant problem with the Court of Appeals decision in which the court totally ignored the petitioner's cumulative effect argument under *Thiel*, in which petitioner cited repeatedly after each and every ineffective argument individually in his brief-in-chief to that Court . . . The petitioner assess that if the Court of Appeals had assessed his claim under the "cumulative effect," petitioner believes the claims totally surmount to prejudice resulting in the proceedings being undermined, thus warranting a new trial.

-5-

in limine that would have prevented autopsy photos from being submitted to the jury; and (3) the trial court erred when it failed to obtain a modified "party to a crime" instruction. On January 8, 2009, the Wisconsin Court of Appeals, after resolving the petitioner's claims on their merits, denied Mr. Tolonen's petition for a writ of habeas corpus.

Mr. Tolonen, on February 2, 2009, submitted a petition for review with the Wisconsin Supreme Court. Much like his last petition for review, Mr. Tolonen's submission to the Wisconsin high court was narrow in its focus, raising two issues for review. First, the petitioner argued that the appellate court erred by not looking at the deficiencies of his appellate counsel's representation in its totality.[4] Second, the petitioner contended that the court should "consider revising" a Wisconsin Statute such that it included a section from the *Model Penal Code.* Mr. Tolonen's brief, in his "statement of additional facts," lists the "headings" of arguments that he made in an earlier motion to terminate his appellate counsel during his direct attack

_____

[4] Specifically, Mr. Tolonen phrased the issue as "Should this Court determine whether the *Strickland v. Washington*, [sic] test is to be applied to appellate counsel; and if so, should the cumulative error analysis under the totality of the circumstances apply to habeas corpus cases?"

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 6 of 25   Document 37

on his conviction.[5]   The petitioner's brief to the Wisconsin Supreme Court does not explain what these "headings" mean.   The section of the petitioner's brief devoted to the Sixth Amendment issue reads much like a law review article: half of the Sixth Amendment argument posits that the Wisconsin courts should adopt the *Strickland* standard for evaluating ineffective assistance of appellate counsel claims and the other half of the brief on the Sixth Amendment issue contended that errors of an appellate counsel should be viewed in the aggregate to determine if the right to counsel has been denied.   The petition to the Wisconsin Supreme Court never articulated any specific errors that the appellate counsel committed.    Tolonen's petition did contain the briefs he submitted to the lower court and the lower court's decision.    The Wisconsin Supreme Court denied Tolonen's petition on May 12, 2009.   Six days later, Mr. Tolonen filed his habeas petition in this court. (Docket #1). Having been briefed by all parties on the matter, the court will examine the legal efficacy of Mr. Tolonen's petition.

---

[5] The court will not copy the list of seven statements Mr. Tolonen placed in his brief to the Wisconsin Supreme Court, but, as a matter of example, the first two "headings" are as follows:

[3] THE ATTORNEY HAS REFUSED TO CONTACT TRIAL COUNSEL ALEX FLYNN TO REQUEST THE FILE MAINTAINED BY ATTORNEY FLYNN . . .

[5] ATTORNEY KULKOSKI HAS ONLY RAISED ONE ISSUE ON APPEAL, WHEN OTHER NON-FRIVOLOUS ISSUES EXIST . . .

(elipses in the original).   There are no further statements explaining what any of these "headings" mean.

## DISCUSSION

As a person in custody pursuant to a state court judgment, to be eligible for a writ of habeas corpus Mr. Tolonen must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant a habeas corpus application arising from a state court adjudication on the merits if the state court's decision: (1) "was contrary to" or "involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" federal law if the state court applied the wrong standard or decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010). Moreover, a state court's decision is an "unreasonable application of clearly established federal law" "when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Id.* at 422. In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must

-8-

be shown to not only be erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold."). With these standards in mind, the court proceeds to examine each of the claims in Tolonen's petition.

Mr. Tolonen's habeas petition contains four grounds for relief. First, the petitioner argues that he was deprived of his constitutional right to procedural due process when the state courts refused to sever his trial from that of his co-defendant. Second, the petitioner argues that his trial counsel was ineffective because he: (1) failed to use an expert witness at the petitioner's trial; (2) failed to call a witness who did not see Tolonen kill Guerrero; (3) failed to submit a modified jury instruction; (4) failed to "develop a theory of defense due to the failure to call potential witnesses;" and (5) failed to submit the victim's criminal record at sentencing.[6] Third, Tolonen contends that his appellate counsel was ineffective because he did not raise on the direct appeal the following issues: (1) the trial court erring in not suppressing the petitioner's statements to law enforcement; (2) the trial court erring in displaying

---

[6] Mr. Tolonen's petition states that his appellate counsel was ineffective for failing to raise the five specific claims for why the petitioner's trial counsel was ineffective. Giving Mr. Tolonen the benefit of the doubt and liberally construing his petition, the court assumes that the petitioner is *both* arguing that his trial counsel was ineffective and that his appellate counsel was ineffective.

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 9 of 25   Document 37

autopsy photos to police; (3) the trial court erring in failing to modify a jury instruction; and (4) the ineffective assistance of Mr. Tolonen's trial counsel. Mr. Tolonen's final ground for relief is also related to his ineffective assistance of counsel claims: he contends that the Wisconsin courts erred by failing to "cumulate" all of the errors of his trial and appellate counsels when evaluating his Sixth Amendment right to counsel claims. The court proceeds to examine all of Mr. Tolonen's grounds for relief, beginning with the due process claim.

A.     Due Process Claim

The court notes, before delving into the substance of the petitioner's due process claim, that Mr. Tolonen never submitted a brief in support of this ground for relief; the petitioner decided to devote the entirety of his briefs to the court on the ineffective assistance of counsel issues. As such, the court only has the benefit of the respondent's brief on the due process claim.

Mr. Tolonen, in his petition, claims that he was deprived of his right to procedural due process when the trial court refused to sever his criminal trial so that the petitioner was tried separately from his co-defendant, Jay Weiss. Tolonen argues that one of Mr. Weiss' defenses – that Tolonen was the person primarily responsible for the victim's fatal injuries – was antagonistic to the petitioner, warranting that his trial be severed from that of Mr. Weiss.

The court concludes that the Wisconsin courts did not unreasonably apply clearly established federal law in concluding that Mr. Tolonen's due process rights

were not violated when the petitioner was tried with Jay Weiss.  It is well-settled that "in all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored." *Zafiro v. United States,* 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 317 (1993).  The Supreme Court has stated that "severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.  Here, in this case, Tolonen and Weiss were charged and convicted as "parties to the crime" of reckless homicide, making Mr. Weiss' defense that Mr. Tolonen was the person who landed the fatal blow that killed the victim wholly irrelevant.[7]  Moreover, the "mere presentation of mutually antagonistic defenses does not require severance." *Id.* at 538.  In short, there was no serious risk that having a joint trial, and with it having Mr. Weiss raise an irrelevant defense, compromised Mr. Tolonen's trial rights.  The court will dismiss the petitioner's due process ground for relief.

## B.    Ineffective Assistance of Counsel Claims

Given that the court is now fully apprised of the procedural history of Mr. Tolonen's two collateral attacks in the Wisconsin court system in which the petitioner

---

[7] Under Wisconsin law, "[w]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act." Wis. Stat. § 939.05(1).  As such, the state did not need to prove that Mr. Tolonen was the one who caused the fatal blow, as long as the state proved that he "aided and abetted the commission" of the underlying crime.  Wis. Stat. § 939.05(2)(b).

-11-

raised his ineffective assistance of counsel claims, it is appropriate to examine whether the court can even reach the merits of Tolonen's Sixth Amendment claims.[8] The above articulated standards for deciding whether a court may grant a writ of habeas corpus only control when a claim was "adjudicated on the merits" in a state court proceeding. *Cheeks v. Gaetz*, 571 F.3d 680, 684 (7th Cir. 2009). In order for a claim to be "adjudicated on the merits" in a state court proceeding, a state petitioner seeking a writ of habeas corpus must first exhaust the remedies available to him or her in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks,* 571 F.3d at 685 (internal citations omitted). State remedies are exhausted when the petitioner does not have "the right under the law of the State to raise, by any available procedure," the issues presented in his petition. 28 U.S.C. § 2254(c). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Cheeks,* 571 F.3d at 685. To avoid procedural default, a "habeas petitioner must fully and fairly present his federal claims to the state courts," giving the "state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Anderson v. Benik,* 471

---

[8] In issuing the July 14, 2009 Rule 4 screening order (Docket #7), the record did not contain Mr. Tolonen's submissions to the Wisconsin Supreme Court.

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 12 of 25   Document 37

F.3d 811, 814 (7th Cir. 2006).[9]  Notably the petitioner "must have placed *both* the operative facts and the controlling principles before the state courts." *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) (emphasis added).  Ultimately, fair presentment "requires that the factual *and* legal substance" of the petitioner's claim remain the same in both state and federal court.  *Anderson*, 471 F.3d at 815.

The central issue in this case, at least with respect to Mr. Tolonen's second, third, and fourth grounds for relief, is whether the petitioner fairly presented the operative facts to the Wisconsin Supreme Court with respect to his ineffective assistance of counsel claims.  The Seventh Circuit has visited this very issue several times, as habeas petitioners will often attempt to raise a myriad of factual grounds for an ineffective assistance claim even when few, if any, of those facts were fairly presented to every state court.  In *Hough v. Anderson,* 272 F.3d 878 (7th Cir. 2001), the Court of Appeals held that a petitioner, in raising an ineffective assistance of counsel claim, must "recite, reference, or describe" the facts that gave rise to the claim before the state court in order to fairly present the operative facts to that court.

---

[9] The respondent cites to *Anderson*, which noted four factors to look at when determining whether a petitioner has "fairly presented his federal claim to the state courts:  (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation."  *Anderson,* 471 F.3d at 815.  However, these factors are not particularly helpful to the court's current inquiry as the *Anderson* court was determining whether the petitioner in that case had "apprised" the state courts of the "constitutional nature" of his claim.  *Id.*  Unlike this case, there was no question that the petitioner in *Anderson* had provided the operative facts of his claim to the state court.  Moreover, none of the *Anderson* factors are dispositive, *id,* and each case must be considered on an individual basis.  *Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997).

*Id.* at 892 n.4. When "neither the text nor the citation [in a habeas petitioner's brief to a state court] refer the court to the alleged failures of counsel," the petitioner has not presented the "operative facts" of the issue to that court. *Id.* Other cases have held the same. *See, e.g., Ben-Yisrayl v. Buss*, 540 F.3d 542, 547 (7th Cir. 2008) (holding that two of the three factual bases for a petitioner's ineffective assistance of counsel claim had not been mentioned to the highest state court and, therefore, the petitioner procedurally defaulted); *see also Pinkins v. Buss*, 215 Fed. Appx. 535, 540 (7th Cir. 2007) (holding that a petitioner procedurally defaulted on his ineffective assistance of counsel claims because he did not present the factual predicate that his counsel slept through portions of trial to the state court).

Applying these principles to the case at hand, the court concludes that Mr. Tolonen never presented the operative facts of any of his ineffective assistance of counsel claims to the Wisconsin Supreme Court. This court has scoured the briefs the petitioner submitted to the Wisconsin Supreme Court in each of his collateral attacks on his conviction. Mr. Tolonen opted in his first brief to the Wisconsin Supreme Court to opine on the relevant merits of revising Wisconsin's rules for collateral relief for prisoners for the overwhelming majority of his brief, leaving the Sixth Amendment right to counsel issue for the last quarter of his brief. In the part of his brief that discusses the ineffective assistance of counsel issue, Mr. Tolonen's brief did present the Wisconsin Supreme Court with plenty of legal authority regarding his right to effective assistance of trial counsel, arguing that courts should

-14-

view the flaws of a trial attorney in the aggregate. However, Mr. Tolonen failed to "recite, reference, or describe" any of the alleged errors that his trial counsel committed or a single fact that gave rise to his assertion that his trial counsel was ineffective in his brief to the Wisconsin high court.[10]   *Hough,* 272 F.3d at 892 n.4.

Moreover, Mr. Tolonen's petition to the Wisconsin Supreme Court in his appeal during his second collateral attack on his conviction is similarly deficient. The majority of that brief was devoted to the state law issue of whether the Wisconsin high court should adopt the Model Penal Code's section on complicity with respect to Wis. Stat. § 935.05.   The portion of the petitioner's brief that discusses the ineffective assistance of appellate counsel claim is again framed in only the most broad generalities, arguing that the Wisconsin Supreme Court should recognize that an appellate counsel's errors can accumulate to deprive a petitioner of their Sixth Amendment right to counsel.   In the argument section of the brief, the petitioner never mentions any of the specific reasons for why he thought his appellate counsel was ineffective.[11]   The closest Mr. Tolonen comes to discussing the factual predicate for his legal claims is when he lists in "shotgun style" a series

---

[10] For example, Mr. Tolonen's first argument under his second ground for relief is that his trial counsel was ineffective because he failed to call an expert witness who would have testified that a mark on the victim's head was caused by Jay Weiss.  However, this fact was never discussed in the brief to the Wisconsin Supreme Court, nor did Mr. Tolonen explain why this fact, if true, entailed ineffective assistance of counsel.

[11] For example, Mr. Tolonen's first argument under his third ground for relief is that his appellate counsel was ineffective for not raising the issue that the trial court erred by not suppressing the petitioner's statements to the police.  None of the factual detail of this claim or the legal argument behind this is articulated in the petitioner's brief to the Wisconsin Supreme Court.

of argument headings from an earlier affidavit to terminate his appellate counsel. However, these headings are mere "passing references" to the operative facts propelling the current constitutional issue which is insufficient to fulfill the "fair presentment" requirement. *See Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). In sum, Mr. Tolonen's two petitions to the Wisconsin Supreme Court, while filled with plenty of legal authority, are truly bizarre, in that the briefs ignore all of the facts of his case.

The petitioner raises several arguments as to why he is not procedurally barred from raising the ineffective assistance of counsel claims. Tolonen first contends that he just "reformulated his claims" and that he presented a mere "variation on his legal theory" in this court from what he presented in the Wisconsin Supreme Court.[12] (Pet'r's Rep. Br. 2). However, Mr. Tolonen's assessment of his submissions to the highest court in Wisconsin belies reality: the petitioner's briefs to the Wisconsin Supreme Court did not come close to mentioning the operative facts which underlie his ineffective assistance of counsel claims. By submitting a brief that does not "recite, reference, or describe" any of the facts that give rise to his ineffective assistance of counsel claim, Mr. Tolonen has not merely "reformulated" the argument he made before the Wisconsin Supreme Court in his federal habeas

_____

[12] The petitioner cites to *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992), and *United States ex rel. Nance v. Fairman*, 707 F.2d 936, 940 (7th Cir. 1983), in support of his argument. However, neither of the cases are of much help to Mr. Tolonen: each case confirms that if a true "difference in legal theory" exists between what was urged in state court and what was presented in the habeas petition, the petitioner has not satisfied the exhaustion requirement. *Id.*

-16-

petition; he has wholly crafted a new legal claim that Wisconsin's highest court never had a chance to contemplate.[13]  *Hough,* 272 F.3d at 892 n.4.

Second, Mr. Tolonen argues that he followed the contours of Wis. Stat. § 809.62 when crafting his petition for review for the Wisconsin Supreme Court and, therefore, fairly presented the issues to that court.  However, nothing in Wis. Stat. § 809.62 states that a petitioner should abandon describing the facts propelling a legal claim.  More importantly, there is no authority to indicate that compliance with § 809.62 absolves a petitioner that omitted the operative facts behind his legal claim in his submission to the state courts of his procedural default.  As long as Mr. Tolonen failed to present to the Wisconsin Supreme Court the operative facts behind his ineffective assistance of counsel ground for relief that is currently in his federal habeas petition, this court cannot rule on the merits of his claim.  *Chambers,* 264 F.3d at 738.

Third, Mr. Tolonen argues that the Wisconsin Supreme Court denied his "petitions for review, not as of right, but in its judicial discretion," satisfying the exhaustion requirement.  (Pet'r's Rep. 4).  The court does not understand the petitioner's argument, nor does the petitioner cite any authority that supports his assertion.  Mr. Tolonen submitted two petitions to the Wisconsin Supreme Court

---

[13] Mr. Tolonen claims that by referencing the general legal ground of "ineffective assistance of counsel" that was sufficient to fairly present the claims that he makes in his federal habeas petition to the Wisconsin Supreme Court.  However, fair presentation rules require a petitioner to submit the "operative facts," as well as the legal theory, to state courts. *See Burgin v. Broglin*, 900 F.2d 990, 996-97 (7th Cir. 1990).  Here, Mr. Tolonen all but concedes that he did not present any facts about his claims to the Wisconsin Supreme Court.

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 17 of 25   Document 37

bereft of any factual detail regarding his constitutional claims, and the Wisconsin Supreme Court exercised its discretion in dismissing the appeal. Mr. Tolonen was still required to fairly present the operative facts to the Wisconsin Supreme Court in pursuing his appeal to avoid procedural default. *Chambers,* 264 F.3d at 738. Moreover, the court will not try to further decipher Mr. Tolonen's argument as "[i]nadequately developed arguments are deemed waived." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, No. 08-CV-0184, 2010 U.S. Dist. LEXIS 32501, at *140 (E.D. Wis. Mar. 31, 2010).

Finally, Mr. Tolonen argues that he did present the operative facts of his legal claims to the Wisconsin Supreme Court by referencing the facts "in his appendixes attached to the petitions, which contained the Wisconsin Court of Appeals' Decisions, and relevant portions of the briefs submitted." (Pet'r's Reply Br. 5). Mr. Tolonen assumes that by supplementing his brief with the briefings and rulings in the lower court that the Wisconsin Supreme Court was alerted to the full extent of the federal constitutional questions lurking in the appendix of the brief. However, federal judges cannot "presume that state judges are clairvoyant." *Verdin,* 972 F.2d at 1479 (concluding that a petitioner did not fairly present his claim to the state courts). The United States Supreme Court has been clear: "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does

-18-

so." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); *see also Lockheart v. Hulick,* 443 F.3d 927, 929 (7th Cir. 2006) (holding a petitioner has not "fairly presented a claim" if "a judge must go outside the four corners of the document in order to understand the contention's nature and basis").    As the Wisconsin Supreme Court would have had to read the full extent of the appellate record "in order to learn what the petitioner" was arguing, Mr. Tolonen's ineffective assistance of counsel claims have not been preserved for a federal decision.[14]   *Id.* In short, the Wisconsin Supreme Court never ruled on the substance of the three ineffective assistance of counsel claims that Mr. Tolonen asserts in his current habeas petition, and, as such, the court must conclude that the petitioner has procedurally defaulted on those claims.

However, the procedural default doctrine does not impose an absolute bar to federal relief.    *Perruquet,* 390 F.3d at 514.   Despite a procedural default, a court may rule on the merits of a claim if the petitioner either demonstrates cause for his default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court does not consider the merits of the case.    *Id.*  Establishing "cause" requires demonstrating an external obstacle prevented the petitioner from fairly

---

[14]  The petitioner cites to the case of *Williams v. Washington,* 59 F.3d 673. 677 (7th Cir. 1995), in support of his contention that as long as a claim is in the record the petitioner has presented the claim to the state court.  Not only does this case predate the clear language of the Supreme Court in *Baldwin*, but the petitioner misreads *Williams*.  That case merely stands for the proposition that a petitioner does not need to present every fact to a state court as long as the facts actually relied on in granting the habeas petition were provided to the state tribunal.  *Id.* ("Whether or not the State is correct concerning the absence of these materials before the state courts, its claim must fail . . . [o]ur affirmance of the district court's grant of habeas relief does not depend upon the complained-of evidentiary sources.")

-19-

presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required. *Id.* at 514-15. The "miscarriage of justice" exception applies when the petitioner can demonstrate that he is actually innocent. *Id.* at 515.

Mr. Tolonen first argues that he can demonstrate "cause" for his default because he has proceeded *pro se* throughout his state collateral attacks on his conviction. However, the Seventh Circuit case law indicates that a petitioner's *pro se* status cannot excuse a procedural default. *Salberg v. United States*, 969 F.2d 379, 383 (7th Cir. 1992) ("[S]omeone who chose to represent himself may not turn around and contend that he did not give himself the quality legal advice a lawyer could have supplied"); *see also Barksdale v. Lane*, 957 F.2d 379, 384-86 (7th Cir.) (holding that no less stringent definition of cause applies for pro se litigants), *cert. denied*, 506 U.S. 890 (1992). Accordingly, the court rejects the petitioner's only argument for why there is "cause" for his procedural default.

The petitioner also contends that a miscarriage of justice will result because he is a "flat out innocent man." (Pet'r's Rep. Br. 8). The fundamental miscarriage of justice exception applies in only those "'extremely rare' and 'extraordinary cases' where the petitioner is actually innocent of the crime for which he is imprisoned." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). To support such a claim, a petitioner "must come forward with 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

-20-

evidence – that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 130 L.Ed. 2d 808, 115 S. Ct. 851 (1995)). The habeas petitioner then has the burden of showing that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Smith v. McKee*, 598 F.3d 374, 387 (7th Cir. 2010).

Tolonen raises several arguments for why he is actually innocent. First, the petitioner claims that he was "tricked into a false confession" and was convicted because of that confession. (Pet'r's Rep. Br. 8). However, the "trick" that Mr. Tolonen alleges occurred that lured him into confessing was that police officers stated to the petitioner that they were investigating a "fight," not a homicide. This fact was introduced to the jury, but the jury was not persuaded to find that the confession was incredible.[15] As such, Mr. Tolonen has not introduced "new reliable evidence" regarding his confession that would cause this court to conclude that he is actually innocent. *Schlup,* 513 U.S. at 324.

Second, the petitioner states that an eyewitness is willing to testify that he did not see Tolonen kick or stomp the victim. Even Mr. Tolonen's own description of what this witness would testify to is hardly a ringing endorsement that the petitioner is actually innocent of the crime of which he was convicted. The witness is someone who saw the fight from his bedroom window and merely states that he did not

---

[15] Moreover, there is no reason to think that introducing the statements into evidence violated the Fifth Amendment. "[T]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring v. Colorado*, 479 U.S. 565, 574 (1987).

-21-

personally see Mr. Tolonen lay the final blows to Jose Guerrero.  The witness' testimony, if believed and interpreted in a light most favorably to Mr. Tolonen, would not have helped the petitioner had it been introduced at trial.  Mr. Tolonen was charged as a "party to the crime," meaning that as long as the evidence showed he "aided and abetted" the commission of the homicide, he was guilty of the underlying crime of reckless homicide.  Wis. Stat. § 939.05.  Therefore, it is wholly irrelevant that Tolonen did not strike the final blow that killed the victim.  Moreover, the witness' testimony would have been contradicted by nearly the entirety of the record before the jury.  In fact, the jury did receive similar evidence from a witness statement that asserted that Mr. Tolonen did not kick Mr. Guerrero, and the jury still concluded that Mr. Tolonen was guilty.  In short, the petitioner has not demonstrated that "no reasonable juror would have convicted him in light of the new evidence." *Smith,* 598 F.3d at 387.

Finally, Mr. Tolonen argues that because the petitioner's "shoes, clothing, or broomstick were not entered into evidence," and because there was "not one iota of DNA" linking the victim to Tolonen, the petitioner is actually innocent.  (Pet'r's Mot. 7-8).  However, Mr. Tolonen is not providing any "new evidence" to indicate his innocence; the petitioner is merely parroting what his trial counsel stated in his closing argument to the jury during the trial.[16]  All of the information about the lack

---

[16] Ironically, Mr. Tolonen is relying on the arguments of his *trial counsel* to try to prove an excuse for why the petitioner did not procedurally default on his claims that his *trial counsel* was ineffective.

-22-

of DNA evidence was presented to the jury, but ultimately the jury was persuaded by the countervailing evidence.  Mr. Tolonen is attempting to reargue the evidence that was presented to the jury, but the burden is on him to provide "new reliable evidence" that indicates he is innocent.  *Schlup,* 513 U.S. at 324. This is a burden Mr. Tolonen simply has not come close to shouldering.  As such, the court must conclude that the petitioner's procedural default cannot be excused.  The court will not evaluate the merits of Mr. Tolonen's three ineffective assistance of counsel claims and instead will dismiss those claims for procedural default.[17]

## C.     Motion for Leave to Amend Petition

There is one remaining issue for the court to resolve: on January 6, 2010, the petitioner filed a motion for leave to amend his petition to add a claim of "actual innocence." (Docket #34).  Even if the court overlooked the fact that Mr. Tolonen is attempting to amend his petition at a rather belated stage of the proceedings, the court cannot grant Mr. Tolonen's request.   "Actual innocence" is not "itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). Moreover, even if actual innocence was itself a separate claim that could provide a

---

[17] The petitioner alludes several times in his briefs that the court should avoid relying on "procedural traps" and rule on the merits of his claims.  (Pet'r's Reply Br. 9).  However, the doctrines of exhaustion and procedural default are not mere "traps" – each doctrine promotes the basic principles of comity toward the state governments and federalism  that are essential to our form of government. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).   The court is bound to obey the procedural rules regarding habeas cases.  The petitioner can only fault himself for not presenting the operative facts of his constitutional claims to the Wisconsin Supreme Court.

Case 2:09-cv-00498-JPS   Filed 06/18/10   Page 23 of 25   Document 37

petitioner habeas relief, the court has already found that Mr. Tolonen has not presented any evidence to prove he is actually innocent. As such, the court will deny the petitioner's motion for leave to amend his petition and will dismiss this case in its entirety.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this court was correct in its ruling on the present motion. As a consequence, the court must deny a certificate of appealability as to the petitioner's motion.

Accordingly,

**IT IS ORDERED** that the petitioner's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's motion be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that petitioner's "Motion for Leave to Amend Petition for Writ of Habeas Corpus" (Docket #34) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of June, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge